October. Hopefully nothing we hear today will add to the Supreme Court's workload in the future. Okay, first case on today's docket 23-30086 Lewis v. Bickham. Mr. Frampton, you're batting lead off today. Take it away. Good afternoon, your honors, and may it please the court. My name is Thomas Frampton. I represent the appellant in this matter, Le'Ron Lewis. Prosecutors did not carry their heavy burden of demonstrating that the October 17 mistrial, which was declared over Mr. Lewis's repeated objections, was a manifest necessity. Indeed, until appellee filed their brief in this court, they had not even suggested as much in over or nearly five years of litigation. They had never argued as much because the US Supreme Court at this course, again and again, have been very clear that a trial court must do at least two things, at very least, to satisfy the manifest necessity standard contemplated by Perez and by Downham. Of course, the decision to declare a mistrial is a discretionary call. But first, the court must at least consider the defendant's interest in continuing his trial to verdict before the impaneled tribunal, which did not occur in this case because the trial court did not even realize that jeopardy had attached. And second, where the basis for the mistrial is something as banal as scheduling considerations, the court must, in the words of Judge Elrod in Fisher, quote, carefully consider reasonable ways to resolve the scheduling conflicts, something our trial courts routinely do, end quote. Because the trial court failed to do either of those things here, it cannot be said to have been exercising its sound discretion and the magistrate report's conclusion otherwise was an error. Because the center of our dispute seems to be on what content the manifest necessity standard has, I want to organize my argument by talking about each of those two requirements in turn and what the US Supreme Court and what the Fifth Circuit has said regarding them. First, the Supreme Court and the Fifth Circuit have made clear that the trial court must always necessarily weigh the defendant's double jeopardy interests before declaring a mistrial. In Dorn, the court held, quote, in the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance of the defendant of being able once and for all to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate. That's at 400 U.S. at 486. In Arizona v. Washington, the Supreme Court unanimously emphasized that same point in section three of its opinion. Quote, great deference does not, of course, end the inquiry. The court then repeated that same line from Dorn and concluded that reviewing courts, quote, have an obligation to satisfy themselves. End quote. But that weighing of the defendant's interest actually happens. That's at 434 U.S. at page 514. That's. I take it nobody mentioned the dreaded words double jeopardy. Oh, no, Your Honor. The defendant up and down was jumping and saying double jeopardy, Your Honor. I actually did say it because I was looking around for that and I didn't find it. Repeatedly, Your Honor, the defendant advised the court that jeopardy had attached when the jury was sworn, that a mistrial was declared, that double jeopardy would bar his retrial. And then before the trial started the next morning, filed a written motion asking to quash the bill of information on the grounds of former jeopardy. So that was more than adequately preserved. This court has said the exact same thing as the U.S. Supreme Court regarding the need to weigh the defendant's interest before declaring a mistrial. It said it in Starling. It said it in Cherry. And perhaps most clearly, it said it in a case called Granberry v. Bonner, which we submit as on all fours with this matter. Now, Granberry was not cited by the magistrate court, but it was decided just a few months after Cherry, the principal case upon which the magistrate relied. And this court in Granberry made abundantly clear that Cherry, where the court found that there was manifest necessity, was limited to situations where, quote, the record considered as a whole indicates that the trial judge in deciding to declare a mistrial carefully considered the alternatives and did not act in an abrupt, erratic, or precipitate manner, end quote. That's at 653 F. 3rd at 1014. Granberry, the court said, looked, quote, very little like Cherry, end quote, because the record showed, quote, a lack of awareness of the double jeopardy consequences of the court's action. Judge King, Your Honor, may remember that case. You authored the court's opinion. I want to say that sounds familiar. Thank God she remembers it. And exactly like in Mr. Lewis's case, that was a case where the juror or the judge abruptly declared a mistrial because a juror had said that he wasn't sure he could continue deliberating because he didn't have blood pressure medication and didn't want to be working late into the night. So the judge said, OK, I'm declaring a mistrial. But just like in this situation, at no point did any of the jurors say I'm physically unable to continue deliberating. Just like in this trial, there were clear alternatives that were available, but the court never. Well, that's the question I have about how to drill down and determine jury unavailability. What constitutes legitimate unavailability? And are you able to point us to any specific precedent from our circuit, other circuits, as to kind of the specific level of inquiry that defines legitimate unavailability? Your Honor, I think the Supreme Court has identified a couple of basic categories that we're nowhere close to in this case. So a juror's death, a juror's incapacitation because of illness, if they're hospitalized or something of that nature, has been found to satisfy. Well, what about beyond death and illness? Are those the only ways that a juror can be legitimately unavailable? Your Honor, I think that the Supreme Court's precedent has made clear that it has to satisfy an extraordinarily high bar. I mean, that's in Christie Brett's, where the court highlighted the traditional standard of, you know, at common law, putting jurors in the back of a wagon and driving them around town to bump a verdict out of them was the practice at common law. That once sworn, the jurors were obliged to stay together and continue deliberating until a mistrial was declared. So juror illness or other considerations may suffice. But I think what this court has said, and I think this gets to my second requirement that I think is the very basic limit on the trial judge's discretion, is to the extent that the mistrial can be avoided by something as simple as like basic scheduling, a brief continuance, the manifest necessity standard is not satisfied. And again, that comes from both U.S. Supreme Court precedent and it comes from Fifth Circuit precedent. In Jordan, the court said, quote, it's apparent from the record that no consideration was given to the possibility of a trial continuance, end quote. And the trial judge, in this case, give the opportunity for a recess so that the parties could try to come up with some alternatives? No, Your Honor. In fact, Mr. Lewis repeatedly said, Your Honor, we could just delay for 24 hours or 48 hours or 72 hours. And the trial judge angrily rebuked Mr. Lewis for even suggesting as chastised Mr. Lewis. My reading was the trial court did ask counsel for alternatives, for solutions. He did give kind of a recess to enable them to consider alternatives. Is that not right? Your Honor, he did give a 10 minute recess to come back and say what they wanted to do. And when Mr. Lewis came back and said he would like to delay for a day or two, if there is in fact a bona fide problem with some of the jurors coming back to tomorrow, he said, no, you don't understand. These people have jobs. We're not going to do that. Importantly, though, there is no dispute that all six of the main jurors and even the seventh alternate, not one of them reported any sort of scheduling conflict whatsoever beyond the next day. That is to say, there is absolutely nothing in the record that suggested that if the jurors returned on the 19th or the 20th or the 21st or the 22nd, they wouldn't be without the slightest bit of inconvenience. I was going to ask Mr. Scott this as well, but I'll ask you to. So what what is the legal significance of there was all this talk about October 17th and how that was the last day that was the trial day here, but how that was the last day that some of these jurors were subject to jury service. And what is the legal significance of none? And Mr. Scott will confirm it. We've talked about this at length. There is absolutely nothing in Louisiana law that suggests that if a juror is summoned and sworn on their last day of jury service eligibility, that they are not legally obligated to continue serving till the end of that trial, whether that trial goes for a day or two days, a week or several months. And notably, no Louisiana court has ever held anything remotely challenging that proposition. And I think that's the only way really to make sense of the magistrate's report in this case, is if the magistrate somehow misunderstood that principle. I think this would be a tougher case. I still think we would win, but I think it would be a tougher case if it's in fact there was something in Louisiana law that said at midnight, the ability of these jurors to continue deliberating vanishes. We would have arguments if that were in fact the case. But that is not so. To the contrary, and again, this isn't Christie Brett's, for hundreds and hundreds of years of the Anglo-American legal tradition, the rule is that once a juror is sworn, they are obligated to continue deliberating and serving on that jury until the trial is completed. Now, with respect to the requirement that the judge consider alternatives where the mistrial is based on scheduling considerations, I'd point this court to Judge Elrod's opinion in United States v. Fisher. Quote, scheduling considerations do not outweigh the court's duty to protect the defendant's constitutional right to be required to stand trial only once and are by themselves insufficient to support the declaration of a mistrial. That's at page 723 of Judge Elrod's opinion. There, the district court's duty to protect Fisher's, that's the defendant's, double jeopardy right required to carefully consider reasonable ways to resolve the scheduling conflicts, something our trial courts routinely do. Nothing in the record, however, shows that the district court did so here. Thus, we hold that there was no manifest necessity. That's at page 723 of Judge Elrod's opinion. And again, that's the case that the magistrate judge relied upon. The court said, quote, before granting a mistrial, it is incumbent on the trial judge to consider available alternatives, end quote. Now, that's not to say that the availability of alternatives always renders the mistrial something less than the manifest necessity. I will concede the point that just because two different judges might come to different conclusions about whether a mistrial is necessary, that doesn't guarantee that we've got a manifest necessity. But in circumstances where there is an obvious, easy alternative based on scheduling that is presented to the trial court, and the trial court refuses to consider it, this court's precedent is clear that the judge is not using the, quote, sound discretion, end quote, that is required under Paris and Downham. Do you agree that given kind of the inherent deference and discretion that goes into decisions like this that the trial court enjoys, given the discretion and deference, does that mean we, as an appellate court, are just looking for evidence in the record that the district court considered the alternatives, not failed to adopt a specific alternative, but we're only looking for record evidence that the trial court refused to consider the alternatives? You know, I guess I'd say two points about that. The first is, and I do think this is important, although this is a state habeas case, we are not dealing with any kind of situation where any kind of edpa deference or any other sort of deference would apply in this case, because of the somewhat unique procedural posture in which we arrive before this court. And secondly, Judge, I think that the Supreme Court and the Fifth Court, but there are circumstances where greater deference is warranted. So, for example, you know, in Arizona v. Washington, the Supreme Court was dealing with the trial court's discretionary decision about how improper statements by defense counsel might have impacted the jurors. In the typical manifest necessity case, which is a deadlocked jury, right, the trial judge might be uniquely situated to assess whether or not the jurors do seem to be truly deadlocked in ways that don't come clear just from reviewing the cold transcript. Our transcript is quite a bit different, Your Honor. In this case, we have, what's different is the judge expressly says on the record, I do not think that you have double jeopardy rights, because the judge erroneously thought jeopardy had not attached until the first witness was sworn. But then later there was kind of this exchange and the trial judge seemed to recognize, Your Honor, I know you don't have to worry about that. Yes, Judge. The point that you're referring to is the trial judge saying you do not have to worry about that, which is not, in fact, taking seriously the defendant's own subjective interest in carrying forward with the same tribunal that's sworn. There's absolutely nothing to show that the trial judge, in fact, weighed in any way, shape, or form Mr. Lewis's right to continue with the forgotten. Did he respond to that, his lawyer? Yes, Your Honor. The objections kept coming. And in fact, you know, once again. He did register. You're wrong. Absolutely. Including in writing the next morning before the October 18th trial started. And I know your time is running out. I know Cherry says that juror unavailability is an accepted reason. But your argument here is that there's no confirmation or what have you that the My understanding that correctly? Correct, Your Honor. If these jurors, let's say that two of the seven, because we only need six, were in fact unavailable, you know, God forbid they were hospitalized and unable to come to court. One said, I haven't been able to find someone to take over my showing yet. Exactly. And our position is that they're available in three different ways. They could have all, there's nothing in the record to suggest anyone had any kind of conflict after October 19th. Our argument is that at least six, maybe all seven, but at least six could have gone as late as needed on October 17th. And frankly, as Your Honor just pointed out, even those conflicts that suggested someone might not be available should the trial go into the second day, they might have been able to get somebody else to make their real estate showing. So they weren't truly unavailable, at least not in the same sense that they were in Cherry, even if that were the only option. All right, Mr. Frampton, we'll see you back on rebuttal in a few minutes. Mr. Scott. Good afternoon. Brad Scott on behalf of the warden. May it please the court. This case comes down to deference, and deference in cases like this are sliding scales, right? This court in United States v. Fisher in 2010 said that the standard of review varies. They started with broad deference when it comes to jury bias cases, also mentioned broad discretion in cases involving potentially deadlocked juries. And then the court jumped to the other end of the spectrum and said on that other end of the spectrum strictest scrutiny is appropriate when the basis for the mistrial is unavailability of prosecution evidence. This case is not about unavailability of prosecution evidence. It is closer to a deadlocked jury. It is closer to a biased jury. It is not there, but it's closer to it. And what the appellant wants to point out is everything that didn't happen. And it's easy to Monday morning quarterback and point out what didn't happen. Oh, the judge should have asked this other question. The judge should have explored this other alternative. And the question is what the judge did. Did the judge do enough looking at what he did, not what he didn't do? And in this he questioned the jurors on the record. He made a determination that two jurors had scheduling conflicts after voir dire where they were told this is going to be a one-day trial, because originally they were told this trial might go into tomorrow. And then he immediately pivoted and said, you know what, we're going to try to make this a one-day trial. So through no fault of the state, all these jurors are here for jury selection and they don't have to say anything about their scheduling conflicts because they think we're out of here. We're done after today. So then one says, I have a work commitment. I have showings to do. That was the real estate agent. Another one has a serious issue with child care and says, my mother had to pick up my child from school. She's okay for tonight, but we're going to have issues for tomorrow. So she can't come back. The judge then brings them all back into the courtroom, every juror back into the courtroom, and in an admitted cursory fashion determined that only three could come back to the next day. This all took place at 4 p.m. Opening statements hadn't even begun yet. Does the cursory fashion in which this happened work against your argument? Yes, it does. The facts that I have on my side are not the strongest facts. And if I had the burden in this court, I would lose. But what the state has is the argument of deference. And what this court has said is that deference should be given to the trial court when it comes to consideration of juror availability. There was the question of what exactly is unavailability? I don't think that there's not a list of things that make a juror legally unavailable. It's a case-by-case basis, and I think that's why there's so much deference to trial court judges. But it means more than death or illness? Yes, it's more than death or illness. I think that child care is a huge issue that should be given great weight. I'll ask you what I asked Mr. Frampton. We have cases that are about death and illness, but are there other cases about other ways that jurors can be legitimately unavailable? Is there kind of this dearth of precedent about this, how this term is defined? Yeah, I couldn't find any. I didn't look super hard for it, for that issue, but when I was looking at the cases to prepare for this, there weren't any that jumped out that had to do with illness, injuries, death, child care, things like that. I couldn't find any of them that said anything about work schedule. When you, I mean, I appreciate the candor about how the facts aren't your kind of strongest sort of foundation, but you have deference on your side, as you put it. So what level of deference should we give to a trial court's decision when it seems that the trial court may not have fully appreciated the double jeopardy consequences of a mistrial? So the judge's maybe legal misunderstanding of, I'm about to create a double jeopardy issue, I don't think has to come into the equation at all. It is we look at the actions of the trial court and what did the judge do whether the judge was thinking in his head, I'm going to create a double jeopardy issue, or whether he didn't even realize that he was creating that issue, I don't think plays into it. Now, I do know that appellant said that the judge has to weigh the defendant's interest. And again, if we can look to the facts to see if the defendant's interest, how the defendant's interest was, or can be weighed against what happened. And in this particular case, before the mistrial was declared, the defendant had noticed his intent to take a writ and asked for a stay of the proceedings. The state had asked for 10 to 15, a continuance to the next day and a 10 or 15 minute recess. All of that was denied. So both the state and the defense wanted more time. This gave them both an extra day of time. I don't think this inured to any one side's benefit. And you agree with Mr. Frampton that there's no legal significance to that day, October 17, being the last day of jury service for some of these jurors. Yes, I agree with that. There's nothing to that. People come into Williams Parish Criminal District Court all the time on their last day. There's no legal significance to it. The practical significance to it, however, is that when someone is sitting with 25 to 30 other people and they're told, you don't have to come back tomorrow, that they're not going to mention it. Also, if it's the last day of their jury service and they've been there for, they've come every Monday and every Wednesday or every Tuesday and every Thursday for the past month, and this is their last day, the likelihood of them having plans, had made plans, increases. So I think it's up to the judges to ask about plans, which this judge did. But on balance, right, I think, and I understand the inconveniences that come along with jury service. I think we all do. But on balance, I think there is case law, particularly Granberry, that says a defendant is entitled to have their trial held in all one proceeding, as opposed to this whole practical situation about whether or not somebody is on their first day or last day of jury service. Am I wrong about that? Right. Yes, I agree. When you look at it as the balancing test, if you're going to... And I'm not saying that there is a test, but if we're going to talk about the practicalities of someone having to plan for an extra day of jury service, as opposed to having a trial disrupted once a jury has been impaneled, then, I mean, there's some give and take on both sides. Yes, I agree. I agree. But that's just one of the factors, right? And that's just one of the things that the trial court mentioned in this case. He also mentioned, obviously, the two other jurors, and then we don't know why, when he called everybody back, there's only three that could come. And we don't know why the other two could not. So three could come back. That means there's four that can't. We know that two of the four were the mother and the real estate agent. We don't know what the other two were. There's nothing in the record on that. So that's part of what I mentioned makes it difficult for me to be up here arguing the facts when I don't have those facts to argue. Tell me if this is wrong. So it seems what we have here is a trial judge who may or may not have understood the consequences of double jeopardy, and who probably should have asked the jurors more questions about legitimate unavailability. Do you dispute any of that? I think the questions that he asked the mother who had child care issues were sufficient. The questions for the real estate agent were sufficient. But as Judge Douglas points out, it was kind of like a, this may become an issue. I might be able to solve this, but we don't know. And yeah, he should have asked the other jurors. He should have done a lot of things. He should have asked many more questions. But again, coming back in on hindsight, it's easy to point out what didn't happen. You say he should have asked more questions of the others. You know, I used to get lectured about not borrowing trouble, you know, which is what exactly could have happened because all of a sudden, these people think, aha, which way is the exit? You know, some of them would think that way. Yes. Yeah, jury service is one of the trickier issues because we have people who don't want to be there, who will say things that they think will get them off, and it's up to the trial court, which I think is why we have the deference to that person sitting in that chair who's viewing those people and can make a credibility call and can see maybe the troubled look on the mother's or the troubled look on the real estate agent's face or the two people who are saying I can't come, that we don't know why they can't come. We also don't know if this was discussed in chambers because nobody came out and said just to recap what was discussed in chambers. But that's why we have the deference. Is the test whether no reasonable jurist would have granted a mistrial? Because saying that saying that a reasonable jurist may have granted a continuance, most reasonable jurists may have granted a continuance. Maybe almost all reasonable jurists may have granted a continuance, but that's different than saying that no reasonable jurist would have granted a mistrial. But is that the test? No reasonable jurist would have done this? That's I don't know. No, sir. I disagree. I agree that that's not the test. And in fact, one of the other issues to look at is whether the state contributed in any way to the circumstances. And in this case, the very last thing that the prosecutor said was she put on the record a small paragraph and she made sure to note that the basis for the mistrial was on the court. The state did not elect a mistrial. The state is present and had witnesses available, ready to go. And the court mistrialed this case without motion of the state or the defense. But the motion for the mistrial in Granberry was sui sponte as well. It didn't have anything to do with the prosecutor contributing to the issues at date in that case either, I don't think. Yes. And in that case, the writ was granted. Right. In that case, there was double jeopardy. Anything else? That's basically the facts. It's pretty simple and straightforward from my end. Okay. Thank you. All right, Mr. Scott. Thanks so much. Mr. Frampton, you're back with five minutes. Thank you, Your Honors. A few quick points. First, I appreciate Appellee's candor on several of these issues. As you may have seen looking throughout the record, there have been some problems with candor at various stages, and it's refreshing to be dealing with such forthright acknowledgment of some aspects of the law and facts here. Appellee said, quote, if I had the burden in this court, I would lose. I would point the court to United States v. Fisher, our Fifth Circuit case from 2010. Quote, the prosecution shoulders the heavy burden of demonstrating manifest necessity, end quote, because of the interests involved on the part of the defendant. The respondent concedes that the trial court acted in an admittedly cursory fashion. That was the quote. This court said in United States v. Bauman, says that the reviewing court is obligated to discern whether the trial judge carefully considered the alternatives and did not act in an abrupt manner. The concession that the court acted in a cursory fashion in declaring a mistrial is the beginning and end of the Fifth Circuit's analysis in assessing whether or not the manifest necessity standard and the sound discretion standard are satisfied. With respect to the question about whether or not the state contributed to the declaration of the mistrial, it's not only Granberry, as Judge Douglas, you pointed out. It's also Jorn, the U.S. Supreme Court's case. That was a mistrial that was concerned that some of the witnesses hadn't been properly advised regarding their right to be free from self-incrimination. The government said, Judge, we properly advised all of these witnesses. The judge was apparently unconvinced and declared a mistrial on that basis, either out of respect for the jurors or perhaps to favor the defendant. In any event, the Supreme Court said that that's still the manifest necessity has to be satisfied, whether it's a the error is attributable to the prosecutors. Obviously, different rules apply. If it's the defendant who's asking for a mistrial, then we don't have the manifest necessity standard. But the same was true in the United States v. Starling, this court's case from 1978, in Granberry v. Bonner, and in the United States v. Fisher, which was also a case where the trial court declared a sui sponte mistrial. I would note that the prosecutors, it is true, did not move for the mistrial. But unlike Mr. Lewis, they did not object. They also had the opportunity to do so. But as the trial court said, you wanted a continuance. And if you look and compare the October 18th trial, at least one of the witnesses who prosecutors had said they needed a continuance for because wasn't prepared to testify on October 17th, prosecutors were able to locate and bring that witness to trial on October 18th. So we do think that there is some evidence in the record that it was a mistrial that accrued to their advantage. Even if that were not the case, though, as the U.S. Supreme Court has said repeatedly, the question isn't whether or not it's clear that the defendant was better or for worse off. The question was whether or not the defendant's right to proceed to trial before the tribunal had sworn that he felt might be positively inclined toward him is scrupulously honored. And when the trial court declares a mistrial based on an admittedly cursory inquiry into the bases for unavailability, that did not happen here. How do you articulate what is the kind of judge on these facts could have granted a continuance instead of a mistrial? But that's not the test, is it? Whether a reasonable judge would have done so. What is our rule? Judge is, I think, what the Fifth Circuit has already said, which is in order, although the decision to declare a mistrial is in a discretionary call from the trial court, at least two things must be true. The trial court must at least provide some weight to the defendant's right to complete the trial. That is to say, it must recognize that there are double jeopardy, there are weighty double jeopardy interests at stake. And two, to the extent that the mistrial is based on scheduling considerations, the rule is what Judge Elrod said it was in Fisher. Scheduling considerations do not outweigh the court's duty to protect the defendant's and are by themselves insufficient to support the declaration of a mistrial. And at least in those circumstances where there are easily available alternatives to a mistrial and no hint of any kind of juror scheduling conflict in the record, the trial court abuses its discretion by declaring a mistrial. Okay. Thank you. Thank you both very much. The case is submitted.